**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KBR INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-11-0196 |
| | § | |
| JOHN CHEVEDDEN, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

KBR has moved for summary judgment declaring that it may exclude John Chevedden's proposal in the proxy materials for its May 2011 annual shareholders meeting. (Docket Entry No. 8).[1] Chevedden has filed a motion contesting venue, (Docket Entry No. 7); a motion to dismiss for lack of personal and subject-matter jurisdiction, (Docket Entry No. 9); and a motion to dismiss for failure to join the Securities and Exchange Commission (S.E.C.) as an indispensable party, (Docket Entry No. 12). Based on the motions, responses, and replies; the record evidence; and the applicable law, the following orders are entered: Chevedden's motion contesting venue is denied; Chevedden's motion to dismiss for lack of personal and subject-matter jurisdiction is denied; and Chevedden's motion to dismiss for failure to join an indispensable party is denied. No decision is yet rendered on KBR's summary judgment motion. Before ruling, the court would like both parties to address the S.E.C.'s no-action letters issued since *Apache Corp. v. Chevedden*, 696 F. Supp. 2d 723 (S.D. Tex. 2010). No later than **March 21, 2011**, the parties may supplement their briefs to address the recent S.E.C. no-action letters.

---

[1] KBR also moved for a speedy ruling under Federal Rule of Civil Procedure 57, (Docket Entry No. 3). That motion is denied as moot by this court's opinion.

The reasons for these orders are set out below.

## I.     Background

### A.     Factual Background

On November 22, 2010, John Chevedden submitted a shareholder proposal to be included in KBR's proxy statement for its May 2011 annual shareholder meeting in Houston, Texas. (Docket Entry No. 8, Ex. 1).  S.E.C. Rule 14a-8(b) limits shareholder proposals to holders of "at least $2,000 in market value, or 1%, of the company's securities entitled to be voted on the proposal at the meeting" who have held that amount of stock continuously for over a year.  17 C.F.R. § 240.14a-8(b)(1).  A company may exclude proposals from shareholders who do not prove ownership if the company gives the shareholder notice and an opportunity to correct the deficiency.  17 C.F.R. § 240.14a-8(f)(1).

One way to prove ownership is a written statement from the "record" holder of securities (usually a broker or bank).  17 C.F.R. § 240.14a-8(b)(1).  Chevedden attached a letter from RAM Trust Services ("RTS") stating that Chevedden met the Rule 14a-8(b) ownership requirements.  RTS identified itself as a "Maine chartered non-depository trust company" that held Chevedden's shares through the "Northern Trust Company in an account under the name Ram Trust Services."  (Docket Entry No. 8, Ex. 2).  KBR informed Chevedden that it would exclude his proposal unless he provided additional proof of ownership because neither he nor RTS was a record holder of KBR stock.  KBR's letter stated:

> As you know, in order to be eligible to submit a proposal for consideration at KBR's 2011 annual meeting, Rule 14a-8 under Regulation 14A of the United States Securities and Exchange Commission ("S.E.C.") requires that a stockholder must have continuously held at least $2,000 in market value, or 1% of KBR's common stock (the class of securities that will be entitled to be voted on the proposal at the meeting) for at least one year by the date the

2

proposal is submitted.  The stockholder must continue to hold those securities through the date of the meeting and must so indicate to us. Your letter that "Rule 14a-8 requirements are intended to be met including the continuous ownership of the required stock value," however, the only information provided to us regarding your share ownership is a letter from [RTS] indicating that they hold 200 shares of KBR on your behalf and have done so since November 17, 2009. Pursuant to SEC's Rule 14a-8(b), since neither you nor [RTS] [is] a record owner of KBR common stock, nor from their letter does it appear that [RTS] is a custodial institution, you must either:

(1) Submit to KBR a written statement from the record holder of the securities (usually a broker or bank) that is a direct record holder of KBR stock verifying that at the time the proposal was submitted you continuously held the requisite securities for at least one year; or

(2) If you have filed a Schedule 13D [], Schedule 13G [], From 3 [], Form 4 [] and/or Form 5 [], or amendments to those documents or updated forms reflecting ownership of the shares as of or before the date on which the one-year eligibility period beings, you may demonstrate eligibility by submitting to the company: (A) a copy of the schedule and/or form, and any subsequent amendments reporting a change in your ownership level; and (B) your written statement that you continuously held the required number of shares for the one-year period as of the date of the statement.

Please note that to be considered a timely response under the SEC's Rule 14a-8(f), all of the documentation requested in this letter must be sent to my attention at the above address within 14 calendar days of the date you receive this request.  If you have any questions regarding the matters discussed in this letter, please feel free to call or write me at the number and address shown above.

(*Id.*, Ex. 3).  KBR alleges that on December 16, 2010, Chevedden responded: "Based on the October 1, 2008 *Hain Celestial* no-action decision, [RTS] is my introducing securities intermediary and hence the owner of record for purposes of Rule 14a-8(b)."  (Docket Entry No. 8, at 2).[2]

Nothing in the record shows that KBR received a letter from the DTC or Cede & Co.  Nor does the record suggest that either Chevedden or RTS appeared on a "Cede breakdown."  There is

---

[2] KBR did not produce this email, but quoted it in its brief.

3

also nothing in the record suggesting that RTS is a participant in the DTC.  Finally, although RTS's letter to KBR states that Northern Trust holds the shares for RTS, Chevedden submitted no letter or other document from Northern Trust.

On January 13, 2010, KBR filed this suit and informed the S.E.C. that it intended to exclude Chevedden's proposal from its proxy materials.  (*Id.*, Ex. 5).  On January 14, 2011, KBR moved for a speedy decision on the basis that it needed to finalize its proxy statement by April 4, 2011 so that it can be timely filed with the S.E.C. and mailed to shareholders by April 8, 2011.  (Docket Entry No. 3).  On February 16, 2011, KBR moved for summary judgment.  KBR argues that it may properly exclude Chevedden's proposal because the letter he submitted from RTS was not a letter from a "record holder" of KBR securities.

### B.    The Regulations

Before a public company holds its annual shareholders' meeting, it must distribute a proxy statement to each shareholder.  A proxy statement includes information about items or initiatives on which the shareholders are asked to vote, such as proposed bylaw amendments, compensation or pension plans, or the issuance of new securities.  2 THOMAS LEE HAZEN, THE LAW OF SECURITIES REGULATION § 10.2, at 83–90.  The proxy card, on which the shareholder may submit his proxy, and the proxy statement together are the "proxy materials."  *See* 17 C.F.R. § 240.14a-8(j).

A shareholder wishing to submit a proposed shareholder resolution may solicit proxies in two ways.  First, he may pay to issue a separate proxy statement, which must satisfy all the disclosure requirements applicable to management's proxy statement.  *See* HAZEN, *supra*, § 10.2, at 85–89.  Second, a shareholder may force management to include his proposal in management's proxy statement, along with a statement supporting the proposal, at the company's expense.  *See id.* § 10.8[1][A] at 136–37.  Regulations promulgated under the Securities Exchange Act of 1934 apply

4

to this second method.  *See* 17 C.F.R. § 240.14a-8 ("This section addresses when a company must include a shareholder's proposal in its proxy statement and identify the proposal in its form of proxy when the company holds an annual or special meeting of shareholders.").

Rule 14a-8 is written in a question-and-answer format.  It informs shareholders that "in order to have your proposal included on a company's proxy card, and included along with any supporting statement in its proxy statement, you must be eligible and follow certain procedures.  Under a few specific circumstances, the company is permitted to exclude your proposal, but only after submitting its reasons to the [S.E.C.]."  *Id.*

Among other reasons,[3] the company may exclude a proposal if the submitter does not satisfy the eligibility requirements.  The requirements limit those submitting proposals to holders of "at least $2,000 in market value, or 1%, of the company's securities entitled to be voted on the proposal at the meeting."  17 C.F.R. § 240.14a-8(b)(1).  The shareholder must have owned at least that amount of securities continuously for one year as of the date he submits the proposal to the company and must continue to do so through the date of the shareholder meeting.  *Id.*

Rule 14a-8(b)(2) sets out two ways for a shareholder who is not a registered owner to establish eligibility.  Only the first of those ways is relevant here.  The rule states:

> If you are the registered holder of your securities, which means that your name appears in the company's records as a shareholder, the company can verify your eligibility on its own, although you will still have to provide the company with a written statement that you intend to continue to hold the securities through the date of the meeting of shareholders. However, *if like many shareholders you are not a*

---

[3]  Many of these reasons for exclusion are substantive.  Among other reasons, a proposal may be excluded if it would cause the company to violate the law, if it relates only to a personal grievance against the company, if it is beyond the company's authority, or if it relates to the company's "ordinary business operations."  17 C.F.R. § 240.14a-8(i).  The company may also exclude proposals that violate the procedural requirements set out in the S.E.C. rules.  These procedural requirements include a 500-word limit, a filing deadline, and a limit to one proposal per shareholder per meeting.  17 C.F.R. § 240.14a-8(c)-(e).

> > *registered holder, the company likely does not know that you are a shareholder, or how many shares you own.* In this case, at the time you submit your proposal, *you must prove your eligibility* to the company in one of two ways [only the first of which is relevant]:
>
> > > (i) The first way is to submit to the company a *written statement from the "record" holder of your securities (usually a broker or bank)* verifying that, at the time you submitted your proposal, you continuously held the securities for at least one year. You must also include your own written statement that you intend to continue to hold the securities through the date of the meeting of shareholders. . . .

17 C.F.R. § 240.14a-8(b)(2) (emphasis added).[4]

If a shareholder's proposal is procedurally deficient or the shareholder has not submitted proper proof of ownership, the company may exclude it only after giving the shareholder notice and an opportunity to correct the deficiency.  17 C.F.R. § 240.14a-8(f)(1).  The company must notify the shareholder of the problem in writing within 14 days of receiving the proposal and inform the shareholder that he has 14 days to respond.  *Id.*  If after the response date the company decides to exclude a proposal, it must notify the S.E.C. of its reasons for doing so no later than 80 days before the company files its proxy materials with the S.E.C.  17 C.F.R. § 240.14a-8(j).  The shareholder is entitled to file with the S.E.C. his arguments for including the proposal.  17 C.F.R. § 240.14a-8(k). The burden is on the company to demonstrate to the S.E.C. that the proposal is properly excluded. 17 C.F.R. § 240.14a-8(g).

A company may ask the S.E.C. Department of Corporate Finance staff for a no-action letter to support the exclusion of a proposal from proxy materials.  Although no-action letters are not

---

[4]  The rule was amended in 1998 to recast it in question-and-answer format.  This amendment added the "usually a bank or broker" language.  The prior amendment, in 1987, was accompanied by a note stating that a shareholder should submit " a written statement by a record owner or an independent third party, such as a depository or broker-dealer holding the securities in street name."  S.E.C. Release No. 34-25217, 52 FR 489 48977-01, 1987 WL 153779 (Dec. 29, 1987).  The notes to the 1998 amendment did not state that a substantive change to Rule 14a-8(b)(2) was intended.  S.E.C. Release No. 34-40018, 63 FR 29106-01, 1998 WL 266441 (May 28, 1998).

required, "virtually all companies that decide to omit a shareholder proposal seek a no-action letter in support of their decision."[5]  The S.E.C. receives hundreds of requests for no-action letters each year.  HAZEN, *supra*, § 10.8[1][A], at 138.  The company submits the proposal and its reasons for exclusion to the S.E.C. staff, seeking a letter stating that the staff will not recommend enforcement action to the S.E.C. if the company chooses to exclude the proposal.  The shareholder often responds with his own submission.  The staff will issue a brief letter stating either that it will not recommend enforcement action ("no action") or that it is "unable to concur" with the company.  This advice comes with a lengthy disclaimer, entitled "Division of Corporate Finance Informal Procedures Regarding Shareholder Proposals."  (Docket Entry No. 14, Ex. 15).  It states:

> The Division of Corporation Finance believes that its responsibility with respect to matters arising under Rule 14a-8 [17 CFR 240.14a-8], as with other matters under the proxy rules, is to aid those who must comply with the rule by offering informal advice and suggestions and to determine, initially, whether or not it may be appropriate in a particular matter to recommend enforcement action to the Commission.  In connection with a shareholder proposal under Rule 14a-8, the Division's staff considers the information furnished to it by the Company in support of its intention to exclude the proposals from the Company's proxy materials, as well as any information furnished by the proponent or the proponent's representative.

> Although Rule 14a-8(k) does not require any communications from shareholders to the Commission's staff, the staff will always consider information concerning alleged violations of the statutes administered by the Commission, including argument as to whether or not activities proposed to be taken would be violative of the statute or rule involved.  The receipt by the staff of such information, however, should not be construed as changing the staff's informal procedures and proxy review into a formal or adversary procedure.

> It is important to note that the staff's and Commission's no-action responses to Rule 14a-8(j) submissions reflect only informal views.

---

[5]  Donna M. Nagy, *Judicial Reliance on Regulatory Interpretation in SEC No-Action Letters: Current Problems and a Proposed Framework*, 83 CORNELL L. REV. 921, 989 (1998).

> The determinations reached in these no-action letters do not and cannot adjudicate the merits of a company's position with respect to the proposal.  Only a court such as a U.S. District Court can decide whether a company is obligated to include shareholder proposals in its proxy materials.  Accordingly a discretionary determination not to recommend or take Commission enforcement action, does not preclude a proponent, or any shareholder of a company, from pursuing any rights he or she may have against the company in court, should the management omit the proposal from the company's proxy material.

(*Id.*).

## II.    The Motion to Dismiss

Chevedden has moved to dismiss under Rule 12(b)(1) and 2(b)(2), (Docket Entry No. 9).  In his motion, he argues that this court does not have personal jurisdiction over him because he has a minimal financial interest in the outcome of this lawsuit.  He argues that litigating in Houston imposes an unfair burden on him because traveling from his residence in Southern California is expensive.

The motion to dismiss also challenges KBR's standing.  Citing the Supreme Court's decisions in *Alexander v. Sandoval*, 532 U.S. 275 (2001) and *Gonzaga University v. Doe*, 536 U.S. 273, 276 (2002), Chevedden argues that the Exchange Act does not provide for private causes of action to enforce Rule 14a-8.  He argues further that KBR has failed to show a case or controversy.  (Docket Entry No. 13).

### A.    Personal Jurisdiction

In response to a Rule 12(b)(2) challenge to a court's personal jurisdiction over a nonresident defendant, the plaintiff bears the burden of establishing that the court has jurisdiction.  *See Luv n'*

8

*care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)); *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (summary calendar). The court must accept as true the party's uncontroverted allegations and resolve any factual conflicts in favor of the party seeking to invoke the court's jurisdiction.  *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003); *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).  The law, however, does not require the court to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).  When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the party asserting jurisdiction is required only to present facts sufficient to constitute a *prima facie* case of personal jurisdiction.  *See Cent. Freight Lines*, 322 F.3d at 380; *Brown v. Slenker*, 220 F.3d 411, 417 (5th Cir. 2000); *Alpine View*, 205 F.3d at 215.  The plaintiff need not establish jurisdiction by a preponderance of the evidence.  *See Luv n' care*, 438 F.3d at 469.

"When a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant had minimum contacts with the United States."  *Luallen v. Higgs*, 277 F. App'x 402, 404 (5th Cir. May 2, 2008) (quoting *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994)).  The Securities Exchange Act of 1934 provides for national service of process.  It states:

> The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder . . . . Any suit or action to enforce any liability or duty created by this

> chapter or rules and regulations thereunder, or to enjoin any violation
> of such chapter or rules and regulations, may be brought in any such
> district or in the district wherein the defendant is found or is an
> inhabitant or transacts business, and process in such cases may be
> served in any other district of which the defendant is an inhabitant or
> wherever the defendant may be found . . . .

15 U.S.C. § 78aa; *see also Luallen*, 277 F. App'x at 404 ("The Exchange Act contains a provision providing nationwide service of process."). Because the Exchange Act authorizes nationwide service, the only issue is whether Chevedden has sufficient minimum contacts with the United States.

Chevedden is a California resident. His residence in a state of the United States is for this court to exercise personal jurisdiction over him. *See Busch*, 11 F.3d at 1258 ("Given that the relevant sovereign is the United States, it does not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over a defendant residing within the United States."); *Luallen*, 277 F. App'x at 404 ("Here, each of the defendants was a resident of the state of Nevada. Therefore, the minimum contacts test was satisfied and the due process concerns of the Fifth Amendment were not offended."); *Trust Co. of Louisiana v. N.N.P. Inc.*, 104 F.3d 1478, 1486–87, 1491 (5th Cir. 1997) (concluding that the district court's exercise of personal jurisdiction over a defendant was proper under § 78aa where the defendant "indisputably had" sufficient contacts with the United States and affirming the judgment against the defendant under federal securities law and Louisiana law). This court has personal jurisdiction over Chevedden.

Chevedden argues that this court does not have personal jurisdiction over him because he has a *de minimis* investment in KBR securities and because litigating in Houston from his California home is burdensome. Chevedden emphasizes that the burden on him of litigating in Houston exceeds any burden on KBR if it had to litigate in California because KBR is a large corporation

10

with "billions" in assets.  Assuming these facts are true, they do not provide a basis to conclude that Chevedden has insufficient minimum contacts with the United States to deprive this court of personal jurisdiction over him.

### B.    Subject-Matter Jurisdiction

One aspect of subject-matter jurisdiction is standing.  Three elements are required:  "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury."  *Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 405 U.S. 555, 560 (1992)).  As "the party invoking federal jurisdiction," KBR "bears the burden of establishing these elements."  *Lujan*, 504 U.S. at 561.  KBR must meet this burden "'with the manner and degree of evidence required at the successive stages of the litigation,'" which means that "on a motion to dismiss, [she] must allege facts that give rise to a plausible claim of . . . standing."  *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 133–34 (5th Cir. 2009) (quoting *Lujan*, 504 U.S. at 561).  When a complaint seeks multiple kinds of relief, the plaintiff must show standing "for each type of relief sought."  *Summers v. Earth Island Inst.*, --- U.S. ----, 129 S. Ct. 1142, 1149, 173 L.Ed.2d 1 (2009) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S. Ct. 1660, 75 L.Ed.2d 675 (1983)).

Chevedden argues that KBR does not have standing because sections 14(a) and 27 of the Exchange Act do not establish a private right of action to enforce S.E.C. Rule 14a-8.  Section 14(a) provides:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors,

11

to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

15 U.S.C. § 78n.  Section 27 of the Exchange Act grants district courts "exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."  15 U.S.C. § 78aa.  Chevedden acknowledges that the Supreme Court's decision in *J.I. Case Co. v. Borak*, 377 U.S. 426, 84 S. Ct. 1555, 12 L.Ed.2d 423 (1964), recognized a private right of action under section 14(a) of the Exchange Act to enforce certain S.E.C. regulations.  Chevedden argues that the Supreme Court's decision in *Alexander v. Sandoval* puts *Borak* in doubt.  532 U.S. 275 (2001).[6]  He argues that under *Sandoval*, section 14(a) does not create a private right of action to enforce S.E.C. Rule 14a-8 because it does not use "rights-creating language" and does not refer to a private remedy.

*Borak* involved a merger allegedly infected by a false and misleading proxy statement.  The plaintiff shareholder sought rescission or damages citing (1) section 14(a)'s proscription of proxy solicitation in contravention of Commission rules, and (2) Rule 14a-9's ban on false or misleading statements in proxy solicitations.  The Court found it "clear" that section 27 of the Act afforded shareholders the requisite right to sue.  Section 27 gives the federal district courts exclusive jurisdiction over violations of the Act and "of all suits in equity and actions at law brought to enforce any liability or duty created by [the Act] or the rules and regulations thereunder."  *See Roosevelt v.*

---

[6] Chevedden also cites the Supreme Court's decision in *Gonzaga University v. Doe*, 536 U.S. 273 (2002).  In *Gonzaga*, the issue was whether a student may sue a private university under 42 U.S.C. § 1983 to enforce provisions of the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g.  536 U.S. at 276.  1983 KBR does not argue that the Exchange Act creates rights enforceable under section 1983.  *Gonzaga* is inapplicable.

*E.I. Dupont de Nemours & Co.*, 958 F.2d 416, 419–20 (D.C. Cir. 1992) (discussing *Borak*, 377 U.S. 426).

Since *Borak*, the Supreme Court has exercised greater restraint in implying private rights of action and has been critical of aspects of *Borak*'s reasoning. *Id.* at 420. In *Touche Ross & Co. v. Redington*, the Court unsettled one premise of *Borak*'s reasoning. "Section 27," the Court said, is a prescription on federal court jurisdiction, venue, and service of process; it "imposes no liabilities" and "creates no cause of action of its own force and effect." 442 U.S. 560, 577 (1979).

In *Virginia Bankshares, Inc. v. Sandberg*, the Supreme Court refused to extend the *Borak* Section 14(a)/ Rule 14a-9 right of action to minority shareholders who lacked the votes needed to block the merger that gave rise to the claim. 501 U.S. 1083, 1105–08 (1991). The Court's opinion in *Virginia Bankshares* recapitulates the *Touche Ross* main theme: "The ultimate question is one of congressional intent." *Touche Ross*, 442 U.S. at 578, 99 S. Ct. at 2490. "The rule that has emerged in the years since *Borak* . . . is that recognition of any private right of action for violating a federal statute must ultimately rest on congressional intent to provide a private remedy." *Virginia Bankshares*, 501 U.S. at 1102. "The Court indicated a disinclination, however, to disturb a longstanding 'legal structure of private statutory rights [that] has developed without clear indications of congressional intent.'" *Roosevelt* 958 F.2d at 420 (quoting *Virginia Bankshares*, 501 U.S. at 1104).

An implied private right of action under section 14(a) was not at issue in *Sandoval*. The issue in *Sandoval* was whether regulations promulgated under section 602 of Title VI of the Civil Rights Act of 1964 created private rights of action. 532 U.S. at 279. Section 602 empowered federal agencies to promulgate disparate impact regulations to enforce section 601, which provides that "no person shall, 'on the ground of race, color, or national origin be excluded from participating

13

in, be denied the benefits of, or be subjected to discrimination under any program or activity' covered by Title VI." *Id.* at 278 (citing 42 U.S.C. § 2000d). The court found that section 602 does not create private rights of actions to enforce regulations promulgated under section 602 to enforce section 601 because section 602 was an agency directive and did not contain "rights-creating language." Section 601 allows private actions because it "decrees '[n]o person . . . shall . . . be subjected to discrimination.'" Section 602, by contrast, states: "[e]ach Federal department and agency . . . is authorized and directed to effectuate the provisions of [section 601]." *Id.* at 288–89. The Court also noted that section 602 provides an agency-based remedial scheme which can "foreclose a private cause of action." *Id.* at 290. In reaching its decision, the Supreme Court rejected the plaintiff's contention that under *Borak*, "'it is the duty of courts to be alert to provide such remedies as are necessary to make effective the congressional purpose' expressed by a statute," and noted that "[w]e abandoned that understanding in *Cort v. Ash*, 422 U.S. 66, 78 (1975)." *Id.* at 287.

In a case decided before *Sandoval* but after *Touche Ross* and *Virginia Bankshares*, the D.C. Circuit addressed private rights of action under sections 14(a) and 27 to enforce S.E.C. Rule 14a-8, the rule at issue in this litigation. *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416 (D.C. Cir. 1992). The court recognized that while the right of shareholders to bring causes of action to enforce Rule 14a-8 "has been widely assumed" based on *Borak*, the Supreme Court's restraint in finding private cause of actions in *Touche Ross* and *Virginia Bankshares* gave reason to doubt that assumption. *Id.* at 420–21. Noting that *Touche Ross* and *Virginia Bankshares* both expressed a disinclination to disturb *Borak*'s holding that a private right of action may exist under section 14(a) to enforce S.E.C. rules, the court found a private right of action to enforce Rule 14a-8. The court looked to the text of section 14(a), in which "Congress . . . entrusted to the S.E.C. the prescription

14

of rules and regulations governing proxy solicitations 'in the public interest or for the protection of investors.'"  *Id.* at 42.  The court reasoned that this section stemmed from Congress's belief that "fair corporate suffrage is an important right that should attach to every equity security bought on a public exchange," and that Rule 14a-8(c)(7) protected this right.  The court stated:

> Access to management proxy solicitations to sound out management views and to communicate with other shareholders on matters of major import is a right informational in character, one properly derived from section 14(a) and appropriately enforced by private right of action.

*Id.*

The court acknowledged that *Touche Ross* and *Virginia Bankshares* counseled against judicial implication of private rights.  The court continued:

> [I]n view of the informational right rooted in section 14(a), we see no instruction in current Supreme Court opinions to "freeze out" private enforcement of Rule 14a-8, a prescription plainly serving the congressional aim of facilitating democracy.

*Id.* at 422.  The court also noted that the S.E.C. took the position that an implied cause of action existed and that the S.E.C. lacked both the authority and ability to remedy Rule 14a-8(c)(7) violations.

As the D.C. Circuit stated in *Roosevelt*, the Supreme Court's decision in *Sandoval* does not establish that there is no private right of action under section 14(a) to enforce S.E.C. Rule 14a-8.  Rule 14(a) has "rights-creating" language.  Unlike section 602 of Title VI, which provides for agency enforcement, section 27 of the Exchange Act directs courts to enforce the rights and duties created by the Act.  The statutory features behind the Supreme Court's decision in *Sandoval* are not present here.

As one court has noted, "[t]he existence of a private right of action by a shareholder under § 14(a) of the Securities Exchange Act and Rule 14a-8 is well settled." *Amalagated Clothing and Textile Workers Union v. Wal-Mart*, 821 F. Supp. 877, 879 n.1 (S.D.N.Y. 1993). Chevedden has cited no authority to support his contention that *Sandoval* gives reason to doubt the "well-settled" proposition that section 14(a) provides a private cause of action to enforce Rule 14a-8.

Chevedden argues that even if an implied right of action exists, KBR has not met its burden of demonstrating: "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft*, 562 F.3d at 745 (citing *Lujan*, 405 U.S. at 560). Chevedden emphasizes that there is no injury in fact because he has not filed a suit challenging KBR's exclusion of his proposal and asserts that he does not intend to do so in the future.[7]

KBR proceeds under the Declaratory Judgment Act, which states, "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "case of actual controversy" "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 166 L.Ed.2d 604 (2007). The "difference between an abstract question and a 'controversy'

---

[7] Chevedden also moved for sanctions in his reply brief on the basis that KBR misquoted a sentence from his motion to dismiss. Rule 11(c)(2) requires that a party seeking sanctions must serve the Rule 11 motion on the opposing party and may not file the motion with the district court unless the offending filing is not withdrawn or corrected within 21 days after service. Fed. R. Civ. P. 11(c)(2). A motion for sanctions must be made separately from any other motion. *Id.* The record does not show that Chevedden complied with the procedural requirements for seeking sanctions under Rule 11. The motion is denied.

contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L.Ed. 826 (1941). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

KBR has demonstrated an actual controversy between it and Chevedden over whether it must include his proposal in its proxy statement. The controversy is of sufficient immediacy because KBR must finalize its proxy statement by April of this year. Chevedden has an implied right of action under section 14(a) of the Exchange Act. He may sue KBR for refusing to include his proposal. Issuing a declaratory judgment relieves KBR of the uncertainty over its decision to exclude Chevedden's proposal. *See Concise Oil & Gas Partnership v. La. Intrastate Gas Corp.*, 986 F.2d 1463, 1471 (5th Cir. 1993) ("The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."). Courts have held that a public company has standing to seek a declaratory judgment that a shareholder's proposal is properly excluded from a proxy statement because the shareholder's ability to sue to challenge the exclusion creates uncertainty warranting judicial resolution. One court explained:

> It is immaterial whether a seller has standing under the '34 Act because the purpose of the Declaratory Judgment Act is to allow a party to a case or controversy to seek a declaration of non-liability in order to determine the issue and be relieved of the burden of

> uncertainty which may be imposed upon one in the event that a potential claimant does not seek redress in the courts in a timely fashion.  Thus, all that is necessary is that the declaratory defendant would have standing to bring the claims for which the declaratory relief is sought.  Therefore, since defendants would have standing to bring a claim under the '34 Act against plaintiffs, plaintiffs have standing to bring this declaratory judgment action.

*May Dep't Stores v. Emps. Ret. Sys. of Ala.*, No. 93 Civ. 0879, 1993 WL 362389, at *2 (S.D.N.Y. Sept. 14, 1993) (internal citations omitted); *see also City Power & Light Co. v. Kansas Gas & Elec.*, 747 F. Supp. 567, 572 (W.D. Mo. 1990) ("In the instant case, it is clear that this court would have jurisdiction pursuant to section 27 if KG & E filed suit against KCP & L challenging the legality of KCP & L's Schedule 14D-1 because such a suit would be brought to "enforce a liability or duty created by the Exchange Act."  15 U.S.C. § 78aa.  Thus, the court finds it has jurisdiction to entertain the declaratory judgment action filed by KCP & L.").  KBR has met its burden to show standing.  Chevedden's assertion that he has no present intention to sue if KBR excludes his proposal does not undermine the showing.  Chevdden's motion to dismiss for lack of subject-matter jurisdiction is denied.

## III.    The Motion Challenging Venue

Chevedden has filed a separate motion contesting venue.  The venue statute governing claims based on federal-question jurisdiction provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

Chevedden argues that venue is inappropriate because only a small number of events related to this litigation occurred in Houston.  Chevedden is correct that only a few events gave rise to this case.  The basis for KBR's claim is two letters Chevedden sent to Houston asking that his proposal be included in KBR's proxy materials for its annual shareholder meeting in Houston.  Because these letters form the basis of KBR's claims, venue is appropriate in Houston.  *See Fowler v. Broussard*, No. 3-00-CV-1878-D, 2001 WL 184237, at *5 (N.D. Tex. Jan. 22, 2001) (denying motion to dismiss or transfer when the defendant's communications directed to the forum formed the basis of the plaintiff's claims); *Phoenix Mining & Mineral v. Treasury Oil Corp.*, No. 5:06-cv-58, 2007 WL 951866, at *1–2 (S.D. Tex. Mar. 28, 2007) (finding venue proper in Southern District of Texas when "some" of the defendants' allegedly fraudulent communications were directed to there); *Sacody Techs., Inc. v. Avant, Inc.*, 862 F. Supp. 1152, 1157 (S.D.N.Y. 1994) ("The standard set forth in § 1391(a)(2) may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action.").  Chevedden's motion contesting venue is denied.

Alternatively, Chevedden argues that venue would be more appropriate in Southern California.  A district court has "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1999).  The party seeking transfer must show that "the transferee venue is . . . clearly more convenient."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).  Public and private interests factors are relevant.  *Id.*  "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing

witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive .'  The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'"  *Id.* (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)).  These factors are "not necessarily exhaustive or exclusive" and "none can be said to be of dispositive weight."  *Id.* (quotations and alternations omitted).  A primary factor is the convenience of any witnesses, particularly nonparty witnesses.  *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 790 (S.D. Tex. 2005) (citing *LeBouef v. Gulf Operators*, *Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998)).

Chevedden has not demonstrated that the transfer of venue to California is "clearly more convenient."  *Volkswagen*, 545 F.3d at 315.  This case raises a legal issue that will be resolved on the papers.  No court appearance is required, so the parties' relative financial burdens do not provide a basis to transfer the case to California.  Chevedden argues that "[i]t is particularly important that the defendant appear in person in this case because the plaintiff, in its filings, has maligned defendant's character . . . .  Only an in person appearance can allow the court to fairly assess the defendant's demeanor."  Because the critical issue in this case is whether Chevedden's letter to KBR is sufficient proof of stock ownership under Rule 14-8(b), this court's ability to assess Chevedden's demeanor is not relevant to whether this court has personal jurisdiction over him or to whether this court should transfer the case to Southern California.  To the extent Chevedden moved this court to transfer this case to Southern California, that motion is denied.

## IV.    The Motion to Dismiss Under Rule 19

Rule 12(b)(7) allows dismissal for "failure to join a party under Rule 19." "Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue.  It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined." *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003) (footnotes omitted).  A court must first determine if a person should be joined to the lawsuit under Rule 19(a).  If so, joinder should result.  But if such joinder would destroy the court's jurisdiction, the court must determine under Rule 19(b) if the party is indispensable.  If the party is indispensable, then the court must dismiss the litigation.  If the party is not indispensable, the case may continue without joinder.  *Id.*  Rule 19(b) lists four factors to be considered: (1) the extent to which proceeding without the absent party would prejudice either the absent party or the parties to the lawsuit; (2) whether a judgment can be structured with protective provisions which would lessen the potential prejudice; (3) whether a judgment in the absence of the necessary party will be adequate; and (4) whether the plaintiff has an adequate remedy if the lawsuit is dismissed.

Chevedden cites no authority in support of his proposition that the S.E.C. is a necessary party to a declaratory judgment action over whether a company properly excluded a shareholder proposal. The S.E.C. takes the opposite position.  In a document titled, "Division of Corporate Finance — Informal Procedures Regarding Shareholder Proposals," the S.E.C. has explicitly stated that "[o]nly a court such as a U.S. District Court can decide whether a company is obligated to include shareholder proposals in its proxy materials."  (Docket Entry No. 13, Ex. 15).  Similarly, in a document explaining Rule 14a-8 processes titled "Division of Corporate Finance: Staff Legal Bulletin No. 14," the S.E.C. stated that, "[w]here the arguments raised in the company's no-action request are before a court of law, our policy is not comment on those arguments."  (*Id.*, Ex. 7); *see*

*also Roosevelt*, 958 F.2d at 424 ("The [S.E.C.] has consistently regarded the court, and not the agency, as the formal and binding adjudicator of Rule 14a-8's implementation of section 14(a).").

Applying the Rule 19 factors in light of the S.E.C.'s position shows that it is not an indispensable party.  As to the first and second factors — the extent to which proceeding without the absent party would prejudice either the absent party or the parties to the lawsuit and whether a judgment can be structured with protective provisions which would lessen the potential prejudice — Chevedden argues that failure to join the S.E.C. prejudices him because he cannot draw on the S.E.C.'s resources to litigate against KBR.  This is not the prejudice at issue in Rule 19.  And the S.E.C.'s policy statements do not show that it would provide resources to support Chevedden.  The first and second factors do not weigh in favor of finding the S.E.C. is an indispensable party.  The third factor — whether a judgment in the absence of the S.E.C. will be adequate — does not weigh in favor of finding the S.E.C. indispensable.  The S.E.C. consistently refuses to involve itself in judicial proceedings Rule 14a-8 disputes.  The fourth factor — whether the plaintiff will have an adequate remedy if the lawsuit is dismissed — weighs against dismissal.  KBR has not failed to join an indispensable party.

## V.     KBR's Motion for Summary Judgment

### A.     The Legal Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Triple Tee Golf*, *Inc. v.  Nike*, *Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325.  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir.  2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir.  2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

The moving party bears a heavier burden when seeking summary judgment on a claim or defense on which it would bear the burden of proof at trial. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  "[I]f the movant bears the burden of proof on an issue, either because he is

23

the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Id.* (emphasis in original); *see also Meecorp Capital Markets LLC v. Tex-Wave Industries LP*, 265 F. App'x 155, 157 (5th Cir. 2008) (per curiam) (unpublished) (quoting *Fontenot*, 780 F.2d at 1194). But "'[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . .   Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"   *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769 (2007) (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348 (1986)).

### B.   Analysis

In *Apache Corp. v. Chevedden*, this court considered similar issues to those raised by KBR in its motion for summary judgment.  696 F. Supp. 2d 723 (S.D. Tex. 2010).  In *Apache*, Apache Corporation sought summary judgment that it could exclude a shareholder proposal from the same defendant as the instant litigation, John Chevedden.  "The only issue [was] whether Chevedden [had] met the requirements for showing stock ownership under S.E.C. Rule 14a-8(b)(2)."  *Id.* at 724. To prove he met eligibility requirements, Chevedden sent Apache four letters, three from RTS and one from Northern Trust Company (NTC).  Only two of the letters, both from RTS, were timely submitted and this court only considered those letters.  The RTS letters sent to Apache were almost identical to the RTS letter sent to KBR.  The RTS letters stated that it was the "introducing broker" for Chevedden, that Northern Trust was the custodian of the shares, and that Chevedden had held the necessary amount of shares for the necessary duration.  *Id.* at 730–31.

24

After analyzing Rule 14a-8(b), S.E.C. staff legal bulletins and S.E.C. staff no-action letters, this court found that the letters from RTS were insufficient evidence of Chevedden's eligibility. RTS was not a "record holder" of Apache shares under Rule 14a-8(b) because the summary judgment evidence did not show that RTS appeared on either the NOBO list or on any "Cede breakdown." *Id.* at 740. Nor was RTS a DTC participant. *Id.* By contrast, Northern Trust, the company RTS later asserted held Chevedden's shares, was a DTC participant and appeared on the Cede breakdown. RTS's letters that were timely submitted claimed that Northern Trust held the shares but did not provide any additional documents to support its assertion.

In *Apache*, the court explained its narrow ruling that Chevedden's timely submitted letters were inadequate to show ownership, as follows:

> RTS is not a participant in the DTC. It is not registered as a broker with the S.E.C., or the self-regulating industry organizations FINRA and SIPC. Apache argues that RTS is not a broker but an investment adviser, citing its registration as such under Maine law, representations on RAM's website, and federal regulations barring an investment adviser from serving as a broker or custodian except in limited circumstances. Chevedden disputes that RTS has not provided investment advice and that its "sole function is as custodian.". . . The nature of RTS's corporate structure, including whether RTS is or is not an "investment adviser" is not determinative of eligibility. But the inconsistency between the publicly available information about RTS and the statement in the letter that RTS is a "broker" underscores the inadequacy of the RTS letter, standing alone, to show Chevedden's eligibility under Rule 14a-8(b)(2).

696 F. Supp. 2d at 740.

This court declined to accept Apache's position that only a letter from the DTC, the registered owner of the shares, would suffice. But this court also declined to accept Chevedden's position that would require companies to accept any letter purporting to come from an introducing broker that had named a DTC-participating member allegedly having a position in the company.

25

In stating that DTC participants may be record holders for certification purposes under Rule 14a-8, *Apache* is consistent with *Kurz v. Holbrook*, 989 A.2d 140 (Del. Ct. Chancery 2010), which held that DTC participants are "shareholders of record" for purposes of determining the right to vote under Delaware law.  This court declared that Apache could properly exclude Chevedden's proposal.  *Id.* at 740–41.

KBR points out that in the present case, Chevedden has submitted the same type of letter from RTS this court found insufficient in *Apache*.  As in *Apache*, Chevedden has not timely submitted any document from Northern Trust.  Chevedden has neither responded to KBR's motion for summary judgment nor submitted additional evidence showing that he was an eligible shareholder.  Under *Apache*, KBR may exclude Chevedden's proposal from its 2011 proxy materials. Before granting KBR's motion for summary judgment, however, this court would like the parties to address an additional area.  Since the *Apache* decision, the S.E.C. staff has rejected no-action requests from a number of companies that raised arguments to those raised in *Apache*.[8]  The Division of Corporate Finance has not issued additional guidance on the proof of ownership that investors need to provide.

---

[8] *See* The McGraw–Hill Companies, Inc., 2011 WL 190603 (S.E.C. No-Action Letter); Devon Energy Corp., 2011 WL 442368 (S.E.C. No-Action Letter); JP Morgan Chase & Co., 2011 WL 686113, (S.E.C. No-Action Letter); Prudential Fin., Inc., 2010 WL 5279924 (S.E.C. No-Action Letter); Amgen, Inc., 2011 WL 400022 (S.E.C. No-Action Letter); The Allstate Corp., 2011 WL 686110 (S.E.C. No-Action Letter); Pfizer Inc., 2011 WL 550008 (S.E.C. No-Action Letter); Am. Express Co., 2010 WL 5179486 (S.E.C. No-Action Letter); Verizon Commc'ns Inc., 2010 WL 5479676 (S.E.C. No-Action Letter); Bristol–Myers Squibb Co., 2010 WL 5497545 (S.E.C. No-Action Letter); Int'l Paper Co., 2011 WL 528413 (S.E.C. No-Action Letter); Yahoo! Inc., 2011 WL 2011 WL 494128 (S.E.C. No-Action Letter); Int'l Paper Co., 2011 WL 190604 (S.E.C. No-Action Letter); King Pharm., Inc., 2011 WL 318084 (S.E.C. No-Action Letter); Bank of Am. Corp., 2011 WL 318085 (S.E.C. No-Action Letter); King Pharm., Inc., 2011 WL 318087 (S.E.C. No-Action Letter); Kinetic Concepts, Inc., 2011 WL 202114 (S.E.C. No-Action Letter); KBR, Inc., 2011 WL 176579 (S.E.C. No-Action Letter); JP Morgan Chase & Co., 2011 WL 341803 (S.E.C. No-Action Letter); The Allstate Corp., 2011 WL 108683 (S.E.C. No-Action Letter); Devon Energy Corp., 2010 WL 1504434 (S.E.C. No-Action Letter); Union Pac. Corp., 2010 WL 1250765 (S.E.C. No-Action Letter).

This court would like the parties to address these no-action letters, which are not binding but are "nonbinding persuasive authority."  *Apache Corp. v. New York City Employees' Ret. Sys.*, 621 F. Supp. 2d 444, 449 (S.D. Tex. 2008).  No later than **March 21, 2011**, the parties may submit additional briefs limited to the effect of the no-action letters issued since this court's opinion in *Apache v. Chevedden*.

## III.    Conclusion

Chevedden's motion contesting venue, (Docket Entry No. 7); motion to dismiss for lack of personal and subject-matter jurisdiction, (Docket Entry No. 9); and motion to dismiss for failure to join and indispensable party, (Docket Entry No. 12), are denied.  KBR's motion for a speedy hearing, (Docket Entry No. 3), is denied as moot.  The motion for summary judgment will be resolved when the additional briefing is received.

SIGNED on March 9, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge