**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| KBR INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-11-0196 |
| | § | |
| JOHN CHEVEDDEN, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

The facts of this dispute are set out in this court's previous opinion, (Docket Entry No. 17).
To summarize, KBR has filed a complaint seeking declaratory judgment that it may exclude John
Chevedden's proposal in the proxy materials for its May 2011 annual shareholders meeting and
moved for summary judgment. (Docket Entries No. 1, 8).[1] Chevedden moved to dismiss the
complaint on the grounds that this court did not have personal jurisdiction over him; venue was
improper in Houston, Texas; KBR did not have standing to pursue a declaratory judgment; and KBR
failed to join the S.E.C., who Chevedden asserted was a necessary party. (Docket Entries No. 9, 13).
In his motions, Chevedden emphasized that he had no intention to sue KBR if it excluded his
shareholder proposal.

In a prior opinion, this court found that it had personal jurisdiction over Chevedden, venue
was proper in Houston, KBR had standing to seek declaratory judgment, and the S.E.C. was not a
proper party. (Docket Entry No. 17). Before ruling on summary judgment, however, this court
ordered additional briefing on S.E.C. rulings rejecting no-action-letter requests based on this court's
decision in *Apache Corp. v. Chevedden*, 696 F. Supp. 2d 723 (S.D. Tex. 2010), the same decision

---

[1] KBR also moved for a speedy ruling under Federal Rule of Civil Procedure 57, (Docket Entry No. 3).

on which KBR bases its current request for declaratory judgment.  KBR provided additional briefing.  (Docket Entry No. 20).  Chevedden also submitted additional briefing, but did not comment on the S.E.C. no-action-letter decisions.  Instead, Chevedden "stipulate[d] that he will not sue the plaintiff if it elects to exclude his proposal from its proxy materials and his decision not to sue is irrevocable."  (Docket Entry No. 18, at 3).  This court ordered additional briefing on whether it still had jurisdiction given Chevedden's representation.  KBR responded.  (Docket Entry No. 23).  Throughout this dispute, Chevedden has never challenged whether his proposal is properly excluded; he has raised only jurisdictional arguments.  Chevedden has also refused to withdraw his proposals despite KBR's requests that he do so.  (Docket Entry No. 23, Exs. 1–4).

Based on the parties' motions, the responses, and the applicable law, KBR's motion for summary judgment, (Docket Entry No. 8), is granted.  KBR may properly exclude Chevedden's proposal from its proxy materials.  The reasons for this ruling are set forth below.

## I.      Standing

Chevedden argues that KBR does not have standing to seek declaratory judgment because his promise not to sue KBR if it excludes his proposal eliminates any "case or controversy" between Chevedden and KBR.  In his briefing, Chevedden relies on the Supreme Court's decision in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), and argues that under *MedImmune*, a defendant's "mere right to sue is not sufficient to constitute an injury in fact especially where the defendant has disclaimed any intent to do so."  (Docket Entry No. 18, at 3).

In *MedImmune*, the Supreme Court decided whether the "actual controversy" requirement of the Declaratory Judgment Act, 28 U.S.C. § 2201(a), requires a patent licensee to terminate or be in breach of its license agreement before it can seek a declaratory judgment that the underlying patent is invalid, unenforceable, or not infringed.   549 U.S. at 120–21.  MedImmune, Inc.

2

manufactured Synagis, a drug used to prevent respiratory tract disease in infants and young children. To produce Synagis, it entered into a patent-license agreement with Genetch, Inc. Genentech held two patents related to Synagis production; one an existing patent relating to the production of "chimeric antibodies," and the other, a pending patent application, relating to the "coexpression of immunoglobulin chains in recombinant host cells." *Id.* at 121. The coexpression patent application matured into the "Cabilly II" patent. After the maturation, Genentech delivered MedImmune a letter stating that it expected it to pay royalties on the Cabilly II patent. Genentech claimed that the Cabilly II patent was invalid, but it continued to pay royalties under its license agreement. Genentech also sought declaratory judgment that the Cabilly II patent was invalid.

The district court and the Federal Circuit both found that Genentech did not have standing under the Declaratory Judgment Act. The courts reasoned that because Genentech continued to pay royalties, it had no "reasonable apprehension" of litigation with MedImmune. *Id.* at 122. The Supreme Court reversed. The Court held that Genentech was not required to breach or terminate its license agreement so that it could seek declaratory judgment that the underlying patent was invalid. The Court framed the justiciability inquiry as "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The Supreme Court emphasized that Article III requires that the dispute be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* The Court reasoned that though Genentech's continued payment of royalties prevented litigation, it did not make the parties'

dispute abstract; the parties had a concrete dispute as to the patent's validity. *Id.* at 134–36.  It remanded the case to the district court for further consideration.

MedImmune* did not hold, as Chevedden contends, that the possibility of a lawsuit is insufficient to confer standing when the defendant has expressly renounced his intention to sue. Post-*MedImmune* cases are more instructive.  Applying *MedImmune*'s "all of the circumstances" analysis, courts have found that a defendant's promise not to sue does not nullify an actual controversy if the defendant has shown a willingness to enforce his rights.  *See, e.g.*, *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1382–83 (Fed. Cir. 2007) ("We decline to hold that Jorgenson's statement that ST would not sue SanDisk eliminates the justiciable controversy created by ST's actions, because ST has engaged in a course of conduct that shows a preparedness and willingness to enforce its patent rights despite Jorgenson's statement.").  Despite KBR's requests that he withdraw his proposal, Chevedden has refused to do so.  His refusal to withdraw his proposal shows a willingness to continue to litigate the dispute.  It also creates an uncertainty that KBR is entitled to have clarified.  *See Concise Oil & Gas P'ship v. La. Intrastate Gas Corp.*, 986 F.2d 1463, 1471 (5th Cir. 1993) ("The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."); *Familias Unidas v. Briscoe*, 544 F.2d 182, 190 (5th Cir. 1975)  ("While a defendant may unilaterally act in such a manner as to cure the allegedly offensive conduct and foreclose the necessity for injunctive relief, that same unilateral action by the defendant may have no effect whatsoever on the necessity for declaratory judgment relief. Only

4

when such unilateral action resolves or extinguishes all rights can the case or controversy be said to be no longer live and justiciable.").  KBR has standing to pursue declaratory judgment.[2]

## II.   Summary Judgment

This court already found that under its decision in *Apache*, KBR may exclude Chevedden's proposal from its 2011 proxy materials.  The only remaining issue is whether the S.E.C.'s rejections of no-action requests from a number of companies that raised arguments to those raised in *Apache*, casts doubt on *Apache*'s validity.  KBR has submitted additional briefing on this issue; Chevedden has not.

As KBR points out, the S.E.C. has consistently stated that it will defer to a court's decision the exclusion of shareholder proposals.[3]  KBR also pointed out that on August 25, 2010, a few months after this court's decision in *Apache*, the S.E.C. adopted Rule 14a-11, which governs "shareholder proposals that seek to establish a procedure in the company's governing documents for the inclusion of one or more shareholder director nominees."  S.E.C. Release No. 33-9136 (Aug. 25, 2010, *available at* http://www.sec.gov/rules/final/2010/33-9136.pdf.   Similar to Rule 14a-

---

[2]Chevedden also reurged his argument that the S.E.C. is an indispensable party in a brief filed with this court.  This court notes that KBR's declaratory judgment against Chevedden does not necessarily preclude either the S.E.C. or other shareholders from challenging the exclusion of Chevedden's proposal because neither is a party to this litigation.  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Mid-Continent Cas. Co.*, 518 F.2d 292, 295 (10th Cir. 1975) (noting that declaratory judgment is not res judicata as to nonparty).  The S.E.C. is not, however, an indispensable party to this litigation.  As this court noted in its previous opinion, KBR has standing under the Declaratory Judgment Act because Chevedden may file suit asserting an implied right of action under Rule 14a-8.  The S.E.C. is not a necessary party to that suit.  *See* (Docket Entry No. 17, at 16–18, 21–22).

[3]In a document titled, "Division of Corporate Finance — Informal Procedures Regarding Shareholder Proposals," the S.E.C. has explicitly stated that "[o]nly a court such as a U.S. District Court can decide whether a company is obligated to include shareholder proposals in its proxy materials."  (Docket Entry No. 13, Ex. 15).  Similarly, in a document explaining Rule 14a-8 processes titled "Division of Corporate Finance: Staff Legal Bulleting No. 14," the S.E.C. stated that, "[w]here the arguments raised in the company's no-action request are before a court of law, our policy is not comment on those arguments."  (*Id.*, Ex. 7); *see also Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 424 (D.C. Cir. 1992) ("The [S.E.C.] has consistently regarded the court, and not the agency, as the formal and binding adjudicator of Rule 14a-8's implementation of section 14(a).").

8(b)(2)'s proof of ownership requirement, Rule 14a-11 requires that a nominating shareholder who is not the registered holder of securities to demonstrate ownership by attaching "a written statement from the 'record' holder of the nominating shareholder's shares (usually a broker or bank) verifying that, at the time of submitting the shareholder notice," the nominating shareholder "continuously held the securities being used to satisfy the applicable ownership threshold." *Id.* at 102. For a nominating shareholder to establish ownership when the shareholder owns the shares through a broker or bank that is not a participant in the DTC, the S.E.C. stated that:

> The nominating shareholder . . . must (a) obtain and submit a written statement . . . from the broker or bank with which the nominating shareholder . . . maintains an account that provides the information about securities ownership set forth above and (b) obtain and submit a separate written statement from the clearing agency participant through which the securities of the nominating shareholder . . . are held, that (i) identifies the broker or bank for whom the clearing agency participant holds the securities, and (ii) states that the account of such broker or bank has held, as of the date of the written statement, at least the number of securities specified in the initial broker statement, and (iii) states that this account has held at least than amount of securities continuously for at least three years.

*Id.* at 440–41.

This is consistent with *Apache*'s finding that letters from Ram Trust Services (RTS) were insufficient evidence of Chevedden's eligibility. *Apache* found that RTS was not a "record holder" of Apache shares under Rule 14a-8(b) because the summary judgment evidence did not show that RTS appeared on either the NOBO list or on any "Cede breakdown," nor was RTS a DTC participant. *Apache*, 696 F. Supp. 2d at 740–41. In this case, Chevedden has submitted a letter from RTS that has the same deficiencies as the letter in *Apache*. (Docket Entry No. 17). The S.E.C.'s comments on Rule 14a-11 show that *Apache*'s reasoning is still persuasive and provides a basis to

conclude that the S.E.C. no-action letters do not undermine *Apache*.  KBR's motion for summary

judgment is granted.

**III.     Conclusion**

KBR's motion for summary judgment, (Docket Entry No. 8), is granted.  KBR may exclude

Chevedden's proposal from its proxy statement.

SIGNED on April 4, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge